UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

JAMES COX,

      Plaintiff,

v.                                        CIVIL ACTION NO. 5:19-cv-00178

LIGHTNING CONTRACT
SERVICES, INC., and
BENNIE MILAM,

      Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has previously entered default judgment against the Defendants concerning liability. [Doc. 32]. The issue of damages is ready for adjudication following a July 15, 2021 evidentiary hearing. [Doc. 42].

### I.     FINDINGS OF FACT

James Cox instituted this action against Defendants (1) Lightning Contract Services, Inc. ("Lightning"), a temporary staffing agency concentrating on the coal mining industry, and (2) Bennie Milam, the Operations Manager for Lightning. Mr. Cox alleges three separate claims of race discrimination respectively under (1) Title VII of the Civil Rights Act of 1964, (2) Section 1981 of Title 42, and (3) the West Virginia Human Rights Act ("WVHRA").

Beginning in approximately March 2014, Mr. Cox, who is African American, visited Lightning's office in Beckley seeking employment. The principal coal mining employer in the Beckley area at the time was International Coal Group. Mr. Cox previously worked as a coal miner for 12 years, and he possessed all necessary certifications.

When Mr. Cox applied at Lightning, Mr. Milam informed him there were no jobs available. Mr. Cox diligently continued seeking work through Lightning for over two years. He called Lightning every week and visited the office in person every month. Mr. Cox made over 100 contacts with Lightning during his job search. On every occasion Mr. Milam told Mr. Cox that there were no jobs available. Nonetheless, at the same time, many of Mr. Cox's white coal miner acquaintances were obtaining work through Lightning at the International Coal Group mine.

For example, in the fall of 2016, Mr. Cox again visited Lightning's office and was told by Mr. Milam no work was available. Upon leaving, Mr. Cox met a white friend in the parking lot of Lighting's office. Mr. Cox's white friend was told by Mr. Milam that there was work for him. Mr. Cox's white friend relayed this information to Mr. Cox. Mr. Cox then re-entered Lightning's office and was again told by Mr. Milam that there was no work for him.

Charles Jamal Hoskins, an African-American coal miner with the necessary certifications, had a similar experience with Lightning. Mr. Hoskins was told by Mr. Milam that there were no jobs for him or for his brother, who is also African-American. Mr. Hoskins learned that three days after being told by Mr. Milam there were no jobs available, his white coal mining friends applied with Lightning and were successful in obtaining job placement.

In January 2017, Mr. Cox went to a different temporary staffing agency in the area. It was Mr. Cox's mistaken understanding that this other temporary staffing agency only placed coal miners in out-of-state positions. Within three days, Mr. Cox was placed in a job at the International Coal Group facility. Mr. Cox worked for International Coal Group for approximately one year, beginning in January of 2017. He was laid off a year later in an apparent reduction in force. He would not have been laid off, however, had he been hired back in 2014 inasmuch as termination is based on seniority. Numerous white coal miners who were hired in 2014 by

2

Lightning are still employed with International Coal Group. Mr. Cox started a new job with Alpha Natural Resources on July 16, 2021.

Mr. Cox seeks damages for the approximate seven-year period he was unemployed due to Defendants' misconduct. In 2014, coal miners earned $26 per hour, worked six weekly nine-hour shifts, and earned $39 per hour for overtime. International Coal Group employees also received benefits, including healthcare, a matching 401(k), and other benefits. These benefits are conservatively valued at 20% of wages. During that seven-year period, Mr. Cox worked for four months in a coal mining job in the Wheeling, West Virginia area, worked for approximately one year for International Coal Group before he was laid off, and did home repair jobs in which he earned approximately $20,000 per year when he was not employed at full-time coal mining jobs.

On July 25, 2017, Mr. Cox filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), claiming Lightning discriminated against him because of his race. On December 14, 2018, the EEOC issued a Notice of Right to Sue, and Mr. Cox instituted this action on March 13, 2019. He seeks relief including lost wages, lost benefits, damages for emotional distress, and reasonable attorney fees and costs.

Both Lighting and Mr. Milam answered in June 2017. [Docs. 4, 6]. They have failed to appear since or otherwise respond to Court orders. On March 23, 2021, Mr. Cox filed a Motion for Default Judgment. [Doc. 29].

On April 2, 2021, the Court held a hearing on Mr. Cox's Motion for Default Judgment [Doc. 29]. Counsel for Mr. Cox appeared in person. No one appeared for Defendants. The Court entered default against both. [Doc. 32].

Thereafter, on July 15, 2021, the Court held an evidentiary hearing. Mr. Cox and his counsel appeared. No one appeared for Defendants. [Doc. 43]. The Court held the evidentiary

hearing to ascertain the damages to which Mr. Cox is entitled. Mr. Cox thereafter filed proposed findings of fact and conclusions of law. [Doc. 47].

## II. CONCLUSIONS OF LAW

When a party moves for a default judgment, *Federal Rule of Civil Procedure* 55(b) authorizes a district court to "conduct hearings or make referrals" in order to, *inter alia*, "determine the amount of damages[,] establish the truth of any allegation by evidence[,] or investigate any other matter." Fed. R. Civ. P. 55(b)(2)(B)–(D). It is the case that "unliquidated damages normally are not awarded without an evidentiary hearing." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). A district court should "not just accept [a plaintiff's] statement of . . . damages" but should instead "ensure that the damages [a]re appropriate." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

### A. General Damages

"Section 1981 [of Title 42] 'affords a federal remedy against discrimination in private employment on the basis of race.' So does Title VII." *Lowery v. Cir. City Stores, Inc.*, 206 F.3d 431, 440–41 (4th Cir. 2000) (citations omitted). The WVHRA also affords a remedy for employment discrimination on the basis of race. *See* W. Va. Code § 5-11-9.

Under Title VII, "[a]nyone aggrieved by employment discrimination may lodge a charge with the EEOC. . . . If . . . the EEOC . . . chooses not to sue on the claimant's behalf, the claimant, after the passage of 180 days, may demand a right-to-sue letter and institute the Title VII action himself without waiting for the completion of the conciliation procedures." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 458 (1975). "Where intentional engagement in unlawful discrimination is proved, the court may award backpay and order 'such affirmative action as may

be appropriate.'" *Id.* (quoting 42 U.S.C. s 2000e–5(g)). Under Title VII, "[t]he backpay, however, may not be for more than the two-year period prior to the filing of the charge with the Commission." *Id.*

But Title VII is not a comprehensive solution and an "aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief." *Johnson*, 421 U.S. at 459. "Congress noted that the remedies available to the individual under Title VII are co-extensive with the individual's right to sue under the provisions of the Civil Rights Act of 1866, and that the two procedures augment each other and are not mutually exclusive." *Id.* (internal citations and quotations omitted).

"An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages." *Johnson*, 421 U.S. at 460. "Compensatory damages are '[d]amages sufficient in amount to indemnify the injured person for the loss suffered.'" *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 (4th Cir. 2011) (quoting *Black's Law Dictionary* 445 (9th ed. 2009)). The Supreme Court has recognized that "compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation . . . , personal humiliation, and mental anguish and suffering." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (internal quotations and citation omitted). Further, it is important to note that "a backpay award under § 1981 is not restricted to the two years specified for backpay recovery under Title VII." *Johnson*, 421 U.S. at 459–60.

Remedies are also available under the WVHRA. Pursuant to the WVHRA, if the Court finds discrimination, the Court may "order affirmative action which may include, but is not limited to, reinstatement or hiring of employees, granting of back pay or any other legal or

equitable relief as the court deems appropriate." W. Va. Code § 5-11-13(c); *see also Dobson v. E. Associated Coal Corp.*, 188 W. Va. 17, 25, 422 S.E.2d 494, 502 (1992).

The Defendants uncontested racial discrimination resulted in Mr. Cox being unemployed for several years. While Mr. Cox was eventually able to find employment, he was severely delayed in in doing so due to Lightning and Mr. Milam's invidious discrimination. This delay caused Mr. Cox to forfeit the seniority his white counterparts secured, causing him to lose his job during an industry downturn. Based on the testimony during the evidentiary hearing, and the Court's independent calculations, Mr. Cox has proven by a preponderance of the evidence that he is entitled to $400,000 in lost wages and benefits.[1]

Courts may also award compensatory damages for mental and emotional distress, impairment of reputation, and personal humiliation. Such an award is essential here. When Mr. Cox learned his white counterparts obtained jobs from Lighting and Mr. Milam after he was repeatedly turned away, severe emotional distress and humiliation followed naturally. Those white counterparts were neither more qualified nor more experienced than him. They differed in skin color alone. An additional award of $400,000 is appropriate by a preponderance of the evidence.

**B.**   ***Punitive Damages***

As to punitive damages, "[a] prevailing plaintiff in a cause of action under § 1981

---

[1] If Mr. Cox was employed by International Coal Group, he would have worked 54 hours a week for 50 weeks, making $1,586 per week (40 hours at $26 per hour and 14 hours at $39 per hour) for a total of $79,300 per year. He would have received $15,860 per year in benefits (20% of his yearly salary). In total, he would have made $95,160 per year at International Coal Group. Thus, for a period of seven years, Mr. Cox would have made $666,120. However, Mr. Cox was not unemployed for the entire seven-year period. He worked for one year for International Coal Group and for another coal company for four months, and he made $20,000 per year when he was not employed as a coal miner. Therefore, he mitigated his damages in the amount of $240,213. Accordingly, a conservative estimate of Mr. Cox's lost earnings and benefits is $400,000.

is entitled under the common law to punitive damages . . . 'for conduct [by the defendant] exhibiting malice, an evil motive, or recklessness or callous indifference to a federally protected right.'" *Lowery*, 206 F.3d at 441 (citations omitted). An individual may also, under certain circumstances, recover punitive damages under Title VII. *See Lowery*, 206 F.3d at 441 (quoting 42 U.S.C. § 1981a(b)(1)). Recovery of punitive damages under Title VII, however, is only authorized if "the complaining party cannot recover under section 1981." 42 U.S.C. § 1981a(a)(1). Under West Virginia law, punitive damages are appropriate "if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others." W. Va. Code § 55-7-29(a). Pursuant to that same provision, punitive damages in West Virginia should "not exceed the greater of four times the amount of compensatory damages or $500,000, whichever is greater." *Id.* § 55-7-29(c).

Further, punitive damage awards cannot be excessive and hence run afoul of due process. The Supreme Court has "articulated three 'guideposts' for reviewing the constitutionality of a punitive damages award: '(1) the degree or reprehensibility of the defendant's misconduct, (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.'" *In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.*, 810 F.3d 913, 931 (4th Cir. 2016) (quoting *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 440 (2001)).

Punitive damages are appropriate here. This is a clear-cut case of purposeful discrimination. There is undisputed evidence that white coal miners were given employment opportunities by Lighting and Mr. Milam but African Americans were not, sometimes even on the

same day. Punitive damages are meant to punish wrongdoing and are appropriate when a plaintiff can show malice, an evil motive, or recklessness or callous indifference to a federally protected right. Mr. Cox has clearly showed that Lightning and Mr. Milam had an evil motive, in that they intentionally refused to offer the same opportunities to African Americans that they were giving to white people, solely because of the color of their skin. To properly punish Lighting and Mr. Milam, an award of four times the compensatory damages, for a total of $3,200,000, is appropriate. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1 . . . .").[2]

## C.   Attorney Fees

"In any action or proceeding to enforce a provision of section[] 1981 . . . , the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. The WVHRA also affords courts discretion in awarding attorney fees to litigants. *See* W. Va. Code § 5-11-13(c) ("In actions brought under this section, the court in its discretion may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant."). Because Mr. Cox is a prevailing party, the Court determines in its discretion that he is entitled to an award of his reasonable attorney fees in the amount of $11,025.[3]

---

[2] While West Virginia law caps punitive damages at $500,000, Section 1981 contains no such limitation.

[3] This award is for 21 hours of work billed at $525 per hour.

## III.

Based upon the foregoing findings of fact and conclusions of law, it is **ORDERED** as follows:

1. That Mr. Cox be, and he hereby is, awarded against the Defendants the sum of $800,000 in compensatory damages, $3,200,000 in punitive damages, and $11,025 in attorney's fees; and

2. That this action be, and it hereby is, **DISMISSED** and **STRICKEN** from the docket.

The Clerk is directed to send a copy of this Order to counsel of record, to Bennie Milam at 1255 Robert C. Byrd Drive, Crab Orchard, West Virginia, 25827, to Lightning Contract Services, Inc., c/o Geary Burns at PO Box 293, Teays Valley, West Virginia, 25569, and to any unrepresented party.

ENTER: January 31, 2022



Frank W. Volk
United States District Judge